# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

VERNELL SMITH,

    Plaintiff,

v.

COMMISSIONER CAROLYN W. COLVIN,

    Defendant.

CIVIL ACTION NO.: CV214-102

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Paul R. Almanza ("the ALJ" or "ALJ Almanza") denying his claim for a period of disability and disability insurance benefits. Plaintiff urges the Court to reverse the ALJ's decision and award him benefits or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed. For the reasons which follow, the decision of the Commissioner should be **AFFIRMED**.

## BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on June 14, 2011, alleging that he became disabled on January 20, 2011, due to knee issues, low back pain, high blood pressure, shortness of breath, blood clots in his lungs, and allergies. (Doc. 10, p. 2.) After his claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On November 13, 2012, ALJ Almanza conducted a video hearing at which Plaintiff, who was represented by counsel, appeared and testified in Vidalia, Georgia, while the ALJ was in Falls Church, Virginia. Randy Salmons, a vocational expert, also

appeared at the hearing. ALJ Almanza found that Plaintiff was not disabled within the meaning of the Act. (Doc. 7-2, p. 45.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Id. at p. 2).

Plaintiff, born on October 2, 1963, was forty-nine (49) years old when ALJ Almanza issued his final decision. He has a high school education. (Doc. 9, p. 3.) Plaintiff's past relevant work experience includes employment as a meat grader, truck driver, a driver's helper, and stock clerk.[1] (Id. and at Doc. 10, p. 2.)

## DISCUSSION

**I.     The ALJ's Findings**

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 & 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) & 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If

---

[1] Plaintiff's attorney inadvertently listed Plaintiff's past relevant work experience as including work as a "meat grater" and a "drunk driver". (Doc. 9, p. 3.)

2

the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform his past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of January 20, 2011, through the date of ALJ Almanza's decision on December 7, 2012. (Doc. 7-2, p. 47.) At Step Two, the ALJ determined that Plaintiff had degenerative joint disease of his left knee, status-post left total knee replacement, restrictive lung disease, and obesity, conditions considered "severe" under the Regulations.[2]

However, at the third step of the process, the ALJ determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Id. at p. 48.) The ALJ found that Plaintiff had the residual functional capacity, through the date of his

---

[2] The ALJ noted Plaintiff's history of hypertension, mild cardiomegaly, and minimal lumber spondylosis and determined these impairments "would only cause a minimal limitation in his ability to work." (Doc. 7-2, p. 47.)

decision, to perform work at the sedentary level, except with the following limitations: occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; frequently balancing; occasionally stooping, kneeling, crouching, or crawling; avoiding concentrated exposure to extreme cold/heat, fumes, odors, dusts, gases, poorly ventilated areas, and hazards such as unprotected heights; sitting for no more than one (1) hour at a time without the opportunity to alternate to standing for five to ten (5–10) minutes; and no walking for more than 50 yards.[3] (Id. at 49.) At the next step, ALJ Almanza noted Plaintiff was unable to perform his past relevant work as a meat grader, a driver, a driver's helper, or a stock clerk. (Id. at p. 53.) The ALJ determined at the final step that Plaintiff had the residual functional capacity for and could adjust to work as a surveillance system monitor and a food and beverage clerk. (Id. at p. 54.)

## II.  Issues Presented

Plaintiff contends the ALJ erred because his decision is not supported by substantial evidence. Specifically, Plaintiff asserts the ALJ failed to find disability as of Plaintiff's 50th birthday using Rule 201.14. Plaintiff states the ALJ did not apply the proper legal standards to the medical opinions of record. Finally, Plaintiff asserts the ALJ did not apply the correct legal standard to determine whether he satisfies Listing 1.00.

## III.  Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, this Court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

**IV. Grid Rule 201.14**

Plaintiff maintains he turned fifty (50) years old while the Appeals Council was reviewing his claim, and, at that time, he was limited to less than the full range of sedentary work and had no transferrable skills. According to Plaintiff, the Grid Rules apply and direct a finding of disability. (Doc. 9, p. 8.) Plaintiff states he satisfies all of the variables contained in the medical vocational guidelines.

The Commissioner notes the ALJ could not rely exclusively on Grid Rule 201.14 or any other Grid Rule to direct his findings on Plaintiff's disability status given Plaintiff's residual functioning capacity. The Commissioner also notes the ALJ looked to the Grid Rule to determine whether any of these Rules could direct his disability determination at Step 5. The

5

Commissioner states Plaintiff's need for a sit/stand option precluded the use of the Grid Rules to direct the ALJ's disability determination. Thus, the Commissioner maintains, the preferred course of action was to obtain a vocational expert's testimony regarding other work which a claimant can perform, which is what ALJ Almanza did in this case. (Doc. 10, p. 5.) The Commissioner argues Plaintiff did not turn 50 years old until ten (10) months after the ALJ rendered his decision, and considering this would have expanded the scope of the Appeals Council's review.

Social Security regulations currently contain a special section titled the Medical Vocational Guidelines. 20 C.F.R. Pt. 404, Subpt. P, App. 2. The Medical-Vocational Guidelines ("Grids") provide applicants with an alternate path to qualify for disability benefits when their impairments do not meet the requirements of the listed qualifying impairments. The Grids provide for adjudicators to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." Phillips, 357 F.3d at 1239–40. However, "[e]xclusive reliance on the grids is not appropriate either when [the] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." Id. at 1242.

One of the factors the Grids consider is age. "The [G]rids divide all claimants into five age categories: 'closely approaching retirement age' 60–64; 'advanced age,' 55–59; 'closely approaching advanced age,' 50–54; 'younger individual I,' 45–49; and 'younger individual II,' 18–44." White v. Colvin, No. 5:12-CV-03944-KOB, 2014 WL 1259725, at *4 (N.D. Ala. Mar.

26, 2014) (quoting Powers v. Heckler, 738 F.2d 1151, 1152 (11th Cir. 1984) and 20 C.F.R. § 404.1563). "For purposes of determining age under the [G]rids, 'the claimant's age as of the time of the decision governs.'" Crook v. Barnhart, 244 F. Supp. 2d 1281, 1283 (N.D. Ala. 2003) (quoting Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 780 (6th Cir. 1987)). Grid Rule 201.14 sets out that a claimant who is limited to sedentary work, is closely approaching advanced age, has an educational background of "[h]igh school graduate or more–does not provide for direct entry into skilled work," and has skilled or semiskilled previous work experience where the skills are not transferable should be found disabled. White, 2014 WL 1259725, at *4 (citation omitted).

The other means by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy is by the use of a vocational expert. A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy. Phillips, 357 F.3d at 1240. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Ingram, 496 F.3d at 1270 (citation and quotation marks omitted)). "The ALJ is not required to include findings in the hypothetical that he properly finds are unsupported[ ]" by the evidence of record. Arrington v. Soc. Sec. Admin., 358 F. App'x 89, 95 (11th Cir. 2009).

The ALJ noted that, if Plaintiff had the residual functional capacity to perform a full range of sedentary work, Grid Rules 201.21 would require a finding of "not disabled". (Doc. 7-

2, p. 54.) However, the ALJ determined Plaintiff's ability to perform a full range of sedentary work was impeded by additional limitations, as noted above. ALJ Almanza noted that, to determine the extent these additional limitations eroded Plaintiff's unskilled sedentary occupational base, he asked the vocational expert, Randy Salmons, whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity. (Id. and at p. 86.) The vocational expert determined Plaintiff could not perform his past work but could perform the jobs of surveillance system monitor and food and beverage clerk, with 33,000 and 8,000 jobs in the national economy, respectively. (Id. at p. 86.) The ALJ used the vocational expert's testimony and concluded, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff was capable of making a successful adjustment to other work which exists in significant numbers in the national economy. Accordingly, ALJ Almanza determined a finding of "not disabled" was appropriate under the framework of Rule 201.21. (Id. at p. 54.)

As noted above, the plaintiff's age at the time of the ALJ's decision is controlling for determining what Grid Rule to use. Crook, 244 F. Supp. 2d at 1283. In this case, Plaintiff was 49 years old at the time ALJ Almanza rendered his decision on December 7, 2012, and did not attain age 50 until October 2013. Thus, contrary to Plaintiff's assertion, Grid Rule 201.21 was the appropriate Rule to apply, as Plaintiff was considered to be a "younger individual I" at this time, and his skills were not transferrable.[4] White, 2014 WL 1259725 at *4; Overstreet v. Astrue, No. 2:11-CV-1238-VEH, 2012 WL 1946719, at * 4 (N.D. Ala. May 29, 2012) (noting Rule 201.21 applies where skills are not transferable). Plaintiff was not of "advanced age" or "closely approaching advanced age", and the ALJ was not required to use Grid Rule 201.14. In

---

[4] The Court recognizes Plaintiff was represented by different counsel at the hearing before the ALJ. Nevertheless, counsel stated at the hearing Plaintiff was a "younger individual at all times relevant" to the ALJ's determination. (Doc. 7-2, p. 66.)

8

addition, ALJ Almanza posed hypotheticals to the vocational expert containing those limitations he found supported by the record. The ALJ did not err in using a vocational expert to determine whether there were jobs in the national economy Plaintiff could perform. This enumeration of error is without merit.

**V.     Medical Opinions**

Plaintiff avers the ALJ provides "no real explanation" for rejecting the opinions of his treating source physicians. (Doc. 9, p. 11.) Plaintiff asserts the Appeals Council accepted his new evidence from Dr. Waldrop, yet it concluded ALJ Almanza's decision was not contrary to the weight of the evidence. Plaintiff states the Appeals Council perfunctorily adhered to the ALJ's determination, which means the Commissioner's decision is not based on substantial evidence.

The Commissioner responds the ALJ considered all relevant evidence, including the opinions of Plaintiff's treating sources, Plaintiff's subjective complaints, and the medical records. The Commissioner maintains the ALJ gave the treating source opinions the proper weight. As for the "new" evidence from Dr. Waldrop, the Commissioner asserts this evidence concerns Plaintiff's condition after the ALJ's December 7, 2012, decision and is not relevant to the ALJ's determination in this case.

**A.     Treating Sources**

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178–79 (11th Cir. 2011) (alteration in

original) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted).

"Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" Winschel, 631 F.3d at 1179 (quoting Phillips, 357 F.3d at 1241). "The ALJ has wide latitude to determine what weight to assign to those opinions, so long as he operates within the regulatory and judicial frameworks." Zanders v. Colvin, No. CV412-182, 2013 WL 4077456, at *5 (S.D. Ga. Aug. 12, 2013). "For instance, when discounting a medical opinion, he should consider several factors, including the examining relationship, the treatment relationship, the doctor's specialization, whether the opinion is amply supported, and whether the opinion is consistent with the record." Id. (citing 20 C.F.R. §§ 404.1527(c) & 416.927(c)). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel, 631 F.3d at 1179 (citation omitted). Failure to "clearly articulate the reasons for giving less weight to the opinion of a treating physician" is "reversible error." Lewis, 125 F.3d at 1440 (citation omitted).

In this case, ALJ Almanza noted Dr. J. Lex Kenerly, III, examined Plaintiff after he fell at work after his alleged onset date, and Dr. Kenerly observed Plaintiff walked with a limp and had mild tenderness in his knee.[5] (Doc. 7-2, p. 50.) Plaintiff was diagnosed with moderate medial compartment osteoarthritis, which Dr. Kenerly treated with pain medication, and provided work restrictions. Those restrictions were that Plaintiff was restricted to alternating

---

[5] Dr. Kenerly diagnosed Plaintiff with a mild knee sprain, which he treated with an injection, in August 2009 (which was before Plaintiff's alleged onset date). Dr. Kenerly noted Plaintiff was "much improved[ ]" by October 2009. (Doc. 7-2, p. 50) (citing Doc. 7-7, p. 6.)

10

sitting and standing and walking short distances and that he should be restricted to sedentary duties only. (Id. at pp. 50–51.) The ALJ stated he assigned Dr. Kenerly's work restrictions relating to Plaintiff's knee "great weight" because Dr. Kenerly examined and treated Plaintiff for his knee injury, and his restrictions were consistent with Plaintiff's physical examination results and MRI diagnoses. (Id. at p. 51.) ALJ Almanza also stated Dr. Kenerly's opinion addressed Plaintiff's subjective complaints regarding his knee, such as Plaintiff's report that his knee pain increased if he sat or stood continuously. However, ALJ Almanza found Dr. Kenerly's opinion that Plaintiff should be restricted from squatting, kneeling, climbing, or twisting because his knee would lock or "give way[ ]" was entitled to "limited weight[.]" (Id.). The ALJ gave this portion of Dr. Kenerly's opinion limited weight because the ALJ found no evidence that these limitations lasted longer than ten (10) months after Plaintiff's alleged onset date, and there was no evidence of record that Plaintiff had these specific restrictions.

In addition, ALJ Almanza noted Plaintiff's physical therapist, as of October 2012, was able to "advance [Plaintiff's] progress to a stationary bike with full revolutions." (Id.). Further, the ALJ noted Plaintiff's testimony, which revealed his complaints of knee pain but not many specific instances of his inability to perform certain tasks, as well as Plaintiff's ability to climb several steps to enter his home. ALJ Almanza also assigned limited weight to Dr. Kenerly's opinion that Plaintiff could return to work within three to six months of an "uncomplicated knee surgery[ ]" due to Plaintiff's testimony that he still experienced pain in the replaced knee and that his knee would buckle at times, and the medical evidence which revealed Plaintiff had to walk with a cane, has an abnormal gait, and experienced pain which increased in the cold weather. (Id. & at p. 52.)

As for Dr. Derrick Phillips' opinion that Plaintiff should not return to work until he was reevaluated, ALJ Almanza stated he assigned this opinion limited weight because Dr. Phillips' opinion did not include any treatment or examination notes or any prescriptions. The ALJ also noted Dr. Phillips' examination and treatment notes from Plaintiff's total knee arthroplasty were not contained in the record. Moreover, ALJ Almanza concluded that Dr. Phillips' opinion was inconsistent with the medical evidence of record and Plaintiff's testimony. Specifically, the ALJ observed that the medical evidence reveals Plaintiff was independent in all of his activities of daily living. The ALJ also recounted Plaintiff's testimony that he: had no problems with personal hygiene; attended church several times a week; dressed himself; assisted with getting his children to school; read; watched television; and monitored his children's homework and chores after school. (Id. at p. 52.) However, ALJ Almanza assigned great weight to Dr. Phillips' opinions that Plaintiff needed a permanent disability parking permit, could not walk without an assistive device, and was severely limited in his ability to walk because other medical evidence and Plaintiff's testimony supported these opinions. (Id. at p. 53.)

ALJ Almanza gave specific reasons for discounting certain portions of Dr. Kenerly's and Dr. Phillips' opinions, namely that those portions to which he assigned limited weight were inconsistent with other medical evidence of record and/or Plaintiff's testimony. ALJ Almanza satisfies the "good cause" standard in rejecting these treating physicians' opinions—at least in part—which is all that was required of him. This enumeration of error is also without merit.

### B. "New" Evidence

If new and material evidence is submitted, the Appeals Council shall consider the additional evidence, along with the entire record, only where it relates to the period on or before the date of the administrative law judge hearing decision. 20 C.F.R. § 404.970(b). "The Appeals

Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" Ingram, 496 F.3d at 1261 (quoting 20 C.F.R. § 404.970(b)).

Here, Dr. John Waldrop did not examine or treat Plaintiff on or before December 7, 2012, which is the date ALJ Almanza issued his ruling. Rather, Dr. Waldrop stated he had been examining and treating Plaintiff since December 12, 2012. (Doc. 7-10, p. 97.) As Dr. Waldrop was not a treating physician to Plaintiff prior to the ALJ's decision, the Appeals Council had no duty to review Dr. Waldrop's medical narrative. Consequently, this enumeration of error is without merit.

## VI.     Listings 1.02 and 1.03

Plaintiff states the medical evidence of record establishes his need for a cane to ambulate effectively, which the ALJ recognized. According to Plaintiff, the medical evidence at least requires a medical expert to determine whether he equals Listing 1.02 and/or Listing 1.03 due to his inability to ambulate effectively. In fact, Plaintiff maintains he has been prescribed a cane for ambulating, is obese, and has difficulty maintaining his balance and walking with his cane.

The Commissioner asserts Plaintiff fails to meet his burden of establishing his impairments meet Listings 1.02 and 1.03. Specifically, the Commissioner notes Plaintiff's examinations did not reveal gross anatomical deformity in his knees or any other joint, stiffness with signs of limitation of motion, or other abnormal motion in the knees.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Arrington, 358 F. App'x at 93 (citing Sullivan v. Zebley, 493 U.S. 521, 530 (1990)). Listing 1.02 concerns major dysfunction of a joint(s) (due to any cause),

which is characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). The major dysfunction is also with: "Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00(B)(2)(b); or [i]nvolvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00(B)(2)(c)." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 1.02. Listing 1.03 concerns reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 1.03. "The inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Arrington, 358 F. App'x at 93–94 (citing § 1.00(B)(2)(b)(1)).

"[E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the

inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." Id. (citing § 1.00(B)(2)(b)(2)). "The definition of ineffective ambulation is the same for the purposes of listings 1.02 and 1.03, see 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.02(A), 1.03 (referencing the same definition of ineffective ambulation in 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(B)(2))[.]" Buttram v. Colvin, No. 4:13-CV-00390-AKK, 2013 WL 6225238, at *6 (N.D. Ala. Nov. 20, 2013).

ALJ Almanza reviewed the criteria for Listings 1.02 and 1.03 and determined Plaintiff did not meet either of these Listings' criteria. Specifically, ALJ Almanza noted the medical evidence (discussed above) indicated Plaintiff's need to walk with a cane. (Doc. 7-2, p. 48.) However, ALJ Almanza also noted Plaintiff's testimony that, while he had difficulty with stairs, he was able to climb a few steps to get into his house. ALJ Almanza concluded Listing 1.02 was not met because Plaintiff's hand held device did not limit the functioning of both arms. (Id.) Additionally, the ALJ observed the medical evidence revealed Plaintiff walks with a cane and not a walker, which did not limit both of his upper extremities when he walked. ALJ Almanza concluded Listing 1.03 was not met, either. (Id.)

The ALJ determined the medical evidence of record did not support a finding of meeting or equaling Listings 1.02 and 1.03. As discussed above, ALJ Almanza applied the appropriate legal standards to the weight he assigned Plaintiff's treating physicians' opinions. Plaintiff has not met his burden of establishing he met the criteria for these Listings, and this enumeration of error is without merit.

## **CONCLUSION**

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**. It is also my **RECOMMENDATION** that this case be **CLOSED**.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 1st day of June, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA